## LEATHERBURY *v.* LEATHERBURY

[No. 166, September Term, 1963.]

*Decided January 24, 1964.*

346

The cause was submitted to HENDERSON, HAMMOND, HORNEY, MARBURY and SYBERT, JJ.

Submitted on brief by *George L. Quinn, Jr.,* and *John D. Connelly* for the appellant.

Submitted on brief by *Edward L. Foster* for the appellee.

HAMMOND, J., delivered the opinion of the Court.

A second wife appeals from the dismissal of her bill seeking a divorce on the claim that the Alabama divorce her husband obtained in order to marry her was void. The appellant and her present husband had discussed marriage while he was a boarder at her home. She suggested to him that Alabama would be a good place for a speedy divorce from his then wife and drove him to the airplane in the early morning hours of the day he embarked on his journey to the land promising freedom and a new marital experience. The allegation of the lady was that he was back in her living room at ten o'clock in the evening of that same day and as soon as the sixty-day period of proscription against remarriage in the Alabama decree was over, she and her newly freed swain took on the shackles of matrimony, shackles she attempted to cut little more than a year later. She says it was then she heard for the first time that Alabama divorces were not always what they seemed to be. Her bill of complaint set forth no ground for relief other than the claimed invalidity of her spouse's divorce from his first wife.

The Alabama divorce proceedings and the decree are regular on their faces. The wife filed an acceptance of service and an answer to the bill of complaint, in which she admitted the allegations of age, residence and the marriage and denied all else, and requested that her maiden name be restored to her. The decree makes an express finding of jurisdiction, incorporates the agreement of the parties as to support, and restores the wife's maiden name.

The Supreme Court has held that a former spouse who has participated in a divorce case in which there was a full oppor-

tunity to contest the jurisdictional issue, may not thereafter collaterally attack the divorce in a State other than the granting State, if the granting State does not permit such a collateral attack. *Sherrer v. Sherrer,* 334 U. S. 343; *Coe v. Coe,* 334 U. S. 378.

The rationale of these cases has generally been thought to be that when the spouse against whom relief is sought appears, in person or by an attorney, by filing an answer or otherwise taking part in the case, the divorce which is granted must be recognized in other States as entitled to full faith and credit, not because of a determination that the court had jurisdiction to grant the divorce but because the participating spouse is precluded by the rule of res judicata. *Griswold, Divorce Jurisdiction and Recognition of Divorce Decrees — A Comparative Study,* 65 Harv. L. Rev. 193; 11 Md. L. Rev. 143; 23 Md. L. Rev. 359. If one spouse did not participate, he or she or the State may show that the granting court had no jurisdiction over the plaintiff spouse. *Williams v. North Carolina,* 325 U. S. 226; *Brewster v. Brewster,* 207 Md. 193; *Naylor v. Naylor,* 217 Md. 615. If the original defendant spouse seemingly then participated but in actuality did not, the inattentive deluded or defrauded one may later collaterally attack the divorce. *Pelle v. Pelle,* 229 Md. 160; *Staedler v. Staedler* (N. J.), 78 A. 2d 896; *cf. Gherardi De Parata v. Gherardi De Parata* (Mun. Ct. App. D. C.), 179 A. 2d 723.

*Johnson v. Muelberger,* 340 U. S. 581, 589, and *Cook v. Cook,* 342 U. S. 126, extended the rule of res judicata of *Sherrer* and *Coe* and established as the controlling law that a stranger (including a subsequent spouse) to a divorce decree granted by a court in which both parties appeared cannot collaterally attack the validity of the decree unless the courts of the rendering State would permit such an attack. See also *DuPont v. DuPont* (Del.), 90 A. 2d 468; *Wolf v. Wolf* (Mun. Ct. App. D. C.), 162 A. 2d 776; *Phillips v. Phillips,* 180 N. Y. S. 2d 475, which applied the rule laid down by the Supreme Court.

The complaining wife in the case before us had the burden of persuading the court that Alabama would permit a collateral attack by a subsequent spouse on a divorce decree granted by

one of its courts under the circumstances here present. She did not give notice of her intention to rely on Alabama law under the Uniform Judicial Notice of Foreign Law Act (Code (1957), Art. 35, Secs. 47-53) and there was no waiver of the requirement. The court was not required to notice judicially the law of Alabama (nor are we, Md. Rule 885), other than to presume it is like that of Maryland. *Alexander v. Hergenroeder*, 215 Md. 326, 330; *Hogan v. Q. T. Corporation*, 230 Md. 69, 73-74.

This Court has given indication that one who was not a party to a divorce decree granted in a case wherein husband and wife were before the court may not collaterally attack the decree. *Fisher, Admrx. v. DeMarr*, 226 Md. 509; *Ewald v. Ewald*, 167 Md. 594; *Walker v. Walker*, 125 Md. 649. In *Wolf v. Wolf*, *supra*, the Municipal Court of Appeals of the District of Columbia read the Maryland cases as holding that this State would not permit a collateral attack by a stranger to the divorce decree.

Courts of other States have noted that Alabama will not permit a subsequent spouse, who was a stranger to the decree, to attack an Alabama divorce even though fraudulent allegations and proof of domicile in Alabama had underlain the finding of jurisdiction if the subsequent spouse instigated or helped procure the invalid divorce and had knowledge of the facts as to it. See *Commonwealth v. Case* (Super. Ct. Pa.), 189 A. 2d 756, 759 (a second husband was denied the right to challenge the validity of his wife's clearly fraudulent Alabama divorce from her first husband), citing *Fairclough v. St. Amand*, 217 Ala. 19, 114 So. 472, where the facts were similar to the case at bar and the second husband was held estopped, and *Mussey v. Mussey*, 251 Ala. 439, 37 So. 2d 921, reaching the same result. These Alabama cases were cited with approval in *Aiello v. Aiello*, 272 Ala. 505, 133 So. 2d 18, distinguishing *Hartigan v. Hartigan*, 272 Ala. 67, 128 So. 2d 725, where the same judge who had granted the divorce set it aside five years later with both parties before him, upon their joint admission of fraud on the court in establishing jurisdiction. Both *Hartigan* and *Aiello* make it plain that in Alabama, where both parties participate, the holding of *Levine v. Levine*, 262 Ala. 491, 80 So. 2d

235, that a divorce decree regular on its face but actually fraudulent is not void but voidable and that neither party alone can collaterally attack it if he or she participated in its procurement, is still the law. See also *Phillips v. Phillips, supra.*

It has been suggested that even if the rendering State would permit a collateral attack on its divorce decree by a stranger, a foreign State is not required to do likewise if under its law the complainant is barred on equitable grounds from prevailing or lacks standing to raise the issue. See *Clark, Estoppel Against Jurisdictional Attacks on Decrees of Divorce,* 70 Yale L. J. 45, in which the author points out the changes in *Restatement, Conflict of Laws,* to support his views. Sec. 112 originally read:

> "The validity of a divorce decree cannot be questioned in a proceeding concerning any right or other interest arising out of the marital relation, either by a spouse who has obtained such decree of divorce from a court which had no jurisdiction, or by a spouse who takes advantage of such decree by remarrying."

There was a caveat that no opinion was expressed as to whether a third person "may be precluded from questioning the validity of a divorce decree under the circumstances described in this Section." The caveat was removed in the 1948 Supplement to the *Restatement, Conflict of Laws,* and the following language was added to Comment c to Sec. 112:

> "Any person may be precluded from questioning the validity of a divorce decree if, under all the circumstances, his conduct has led to the obtaining of the divorce decree, or for any other reason has been such as to make it inequitable to permit him to deny the validity of the divorce decree."

The 1953 Tentative Draft No. 1 of the *Restatement, Conflict of Laws,* completely revises Sec. 112 to make it read:

> "A person may be precluded from questioning the validity of a divorce decree if, under the circumstances of the case, it would be inequitable to permit him to do so."

Many courts have applied their own rules of estoppel or lack of standing to sue in denying a subsequent spouse the right to attack the foreign decree he or she had relied on in marrying a party to the divorce later attacked, particularly where the attacker had instigated or advised or paid for the divorce. They do this without going into the actual validity of the challenged decree or even on the assumption it was void or voidable for lack of jurisdiction. Some States say that public policy no longer requires non-recognition of irregular foreign divorces in many situations where preservation of the remarriage may be more desirable than a dubious attempt to resurrect the original one. *Rediker v. Rediker* (Cal. In Bank), 221 P. 2d 1, 6. The following cases are pertinent: *Dietrich v. Dietrich* (Cal. In Bank), 261 P. 2d 269, 273, *cert. den.* 346 U. S. 938 (estoppel applied under facts similar to those in instant case—invalidity of divorce decree not an issue since even if invalid complaint could not question it); *In Re Coleman's Estate* (Cal. App.), 281 P. 2d 567, 579 (one who has remarried in reliance on a divorce decree or one who aided in its procurement so that he could marry the procurer cannot attack it even if it is invalid); *Dennis v. Dennis* (Mass.), 147 N. E. 2d 828 (whatever the standing or lack of it of a person not a party to a foreign divorce to show the validity in a collateral proceeding, it is clear that equitable principles may bar relief); *Norris v. Norris* (Mich. In Bank), 69 N. W. 2d 208, *cert. den.* 350 U. S. 903 (one who accepts the benefit of a decree of divorce will not be heard to question it). See also *Goodloe v. Hawk* (C. A. D. C.), 113 F. 2d 753, 758; *Sears v. Sears* (C. A. D. C.), 293 F. 2d 884; *Weise v. Hughes* (Super. Ct. N. J.), 62 A. 2d 695; *Untermann v. Untermann* (Super. Ct. N. J.), 117 A. 2d 599; *Swift v. Swift* (Iowa), 29 N. W. 2d 535; and 27B C. J. S. *Divorce* Sec. 355, p. 834.

Cases which denied relief to a subsequent spouse by holding that he or she had no legal interest affected by the divorce decree and, therefore, no standing to attack it include: *Cocco v. Cocco* (Conn.), 181 A. 2d 266, and *deMarigny v. deMarigny* (Fla.), 43 So. 2d 442, 447. There is a clear indication in *Aiello v. Aiello, supra,* at page 22 of 133 So. 2d, that Alabama would hold that the subsequent spouse had no standing (for lack of

legal interest at the time) to attack the divorce of his present spouse. See also *Fisher, Admrx. v. DeMarr, supra,* at pp. 519-520 of 226 Md., and *In Re Hanson's Estate* (D. Ct. D. C.), 210 F. Supp. 378.

In our view the court below did not err in denying the wife the right to attack her husband's divorce.

> *Order affirmed, the costs to be paid
> by the appellee.*