MADDEN *v.* COSDEN ET AL.

[No. 158, September Term, 1973.]

*Decided January 30, 1974.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE and ELDRIDGE, JJ.

Peter H. Madden, in proper person, for appellant.

*Rignal W. Baldwin* and *Thomas Waxter, Jr.,* with

whom were *A. MacDonough Plant* and *Semmes, Bowen & Semmes* on the brief, for appellees Anne M. Hallenbeck and Jane M. Humphreys.

Submitted on brief by *J. Nicholas Shriver, Jr.*, and *Alan J. Mogol* for appellees Christina Madden and Michael Madden and by *Nicholas G. Penniman, III, Robert C. Prem* and *William C. C. Barnes* for appellee Audrey Cosden.

SINGLEY, J., delivered the opinion of the Court.

In *Madden v. Mercantile-Safe Deposit & Trust Co.*, 262 Md. 406, 278 A. 2d 55 (1971), we had occasion to affirm a decree of the Circuit Court of Baltimore City, declaring that by a true and proper construction of the will of William R. Hammond, who had died in Baltimore in 1909, the corpus of a trust estate held for the benefit of Audrey H. Madden, Mr. Hammond's daughter and only child, would pass on Mrs. Madden's death to Mr. Hammond's next of kin and heirs at law living at the death of Mrs. Madden, in the manner provided by the 1909 statutes of descent and distribution.

Mrs. Madden died on 4 January 1972, survived by three daughters, Audrey Cosden, Anne M. Hallenbeck, and Jane M. Humphreys, each of whom have descendents, and by three grandchildren, Peter H. Madden, Michael J. Madden and Christina Little Madden, the children of Mrs. Madden's only son, James H. Madden, who had died in 1953.[1]

Immediately following Mrs. Madden's death, Mercantile-Safe Deposit and Trust Company (the Mercantile), trustee of the trust estate created by Mr. Hammond's will, caused to be prepared a schedule of the assets then comprising the trust, which had a value of some $3,000,000.00, and of a proposed distribution, under which Mrs. Cosden, Mrs. Hallenbeck and Mrs. Humphreys,

---

1. Mrs. Hallenbeck has a daughter and a granddaughter; Mrs. Humphreys, five children. These were the principal beneficiaries of Mrs. Madden's individual estate. Mrs. Cosden has two children who received legacies of $10,000.00 each, but like the children of James H. Madden, did not share in Mrs. Madden's residuary estate.

daughters of Mrs. Madden and granddaughters of Mr. Hammond, would each receive one-fourth of the trust assets, and Peter H. Madden, Michael J. Madden and Christina Little Madden, grandchildren of Mrs. Madden and great-grandchildren of Mr. Hammond, would each receive one-twelfth of the trust assets, since they shared equally the one-fourth share which would have passed to their father, if living.

When it became apparent that all of the children of James H. Madden were not willing to acquiesce in the proposed distribution, the Mercantile in June, 1972, filed in the Circuit Court of Baltimore City a bill of complaint which recited the circumstances; asked that the court assume jurisdiction of the trust, and determine the proper distribution of the trust estate.

All of the parties defendant answered. Mrs. Cosden, Mrs. Hallenbeck and Mrs. Humphreys accepted the proposed distribution. Michael J. Madden and Christina Madden submitted to the jurisdiction of the court. Peter H. Madden later filed an amended answer and cross-claim in which he asserted, *inter alia*, that he was entitled to one-sixth of the trust assets, on the theory that the trust estate was equally distributable between Mrs. Cosden, on the one hand, and the three children of James H. Madden, on the other.

The filing of the answer and cross-claim spawned a flurry of pleading, pre-trial discovery and depositions, little of which is pertinent here. Ultimately, the issue raised by Peter H. Madden's cross-claim as regards the distribution of the corpus of the trust came on for separate trial. From a decree ordering distribution in the manner proposed by the Mercantile, Madden appealed.

What follows is a summary of the facts on which Madden relies. Audrey Hammond, daughter of William R. Hammond and the income beneficiary of the trust, was married to James Holmes Bay in Philadelphia, Pennsylvania on 19 July 1910. Two children were born of this marriage, James Holmes Bay, Jr., born 23 May 1911, and Audrey Hammond Bay (now Mrs. Cosden), born 21 May 1914. In October, 1918,

Mrs. Bay sued her husband for divorce in New York. In March, 1920, while an appeal from the dismissal of the New York suit was pending,[2] Mrs. Bay brought another divorce action in Nevada. Mr. Bay was served with a copy of the summons and complaint in Philadelphia, but did not enter an appearance in the Nevada case at that time. A final decree in the Nevada case was entered on 8 July 1920.

On 17 September 1920, Mrs. Bay was married in Reno to William Jay Madden, Jr., by a justice of the peace. A day later, they were married in a religious ceremony in San Francisco.

After the marriage ceremonies, Mr. and Mrs. Madden moved to Greenwich, Connecticut. There, two children were born: Anne, now Mrs. Hallenbeck, on 11 July 1921, and Jane, now Mrs. Humphreys, on 30 October 1923.

In May, 1922, Mrs. Madden and Mr. Bay entered into an agreement which had as its purpose the adjustment of certain property rights and a provision for visitation rights, neither of which had been covered by the Nevada decree. Mr. Bay agreed to move, by attorney, for a modification of the 1920 Nevada decree, in accordance with a stipulation entered into by the parties. The following is an excerpt from the amended decree entered on 17 August 1922, on motion of Mr. Bay, after a hearing at which he and Mrs. Madden were represented by counsel:

"NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

"That the marriage between the plaintiff, Audrey Hammond Bay, and the defendant, James Holmes Bay, be and the same is hereby dissolved, and the said parties are, and each of them is, freed and absolutely released from the bonds of matrimony and from all of the obligations thereof, and granting unto the plaintiff an absolute divorce from the defendant and that plaintiff and defendant each be restored to the status of a single person.

---

2. *See* Bay v. Bay, 192 App. Div. 902 (1st Dep't 1920) (lower court's dismissal of complaint on the merits affirmed).

"IT IS FURTHER ORDERED ADJUDGED AND DECREED:

"That the minor children of the parties, namely, James Holmes Bay and Audrey Hammond Bay, shall continue to reside with the plaintiff.

"That the defendant shall have the right to visit the said children during their minority at such times and places as may be convenient to the plaintiff and as they shall mutually agree, or in the absence of such agreement as shall be mutually agreed by Almuth C. Vandiver, Esq., as attorney for plaintiff and Charles H. Topping, Esq., as attorney for defendant or by their successors; that plaintiff and defendant shall have the right, if they shall so desire, or in case of the absence, death or incapacity of their said attorneys, each to designate another attorney to act in place of the attorney above mentioned; that any costs and expenses incident to such visits by the defendant be defrayed by the defendant and that all communications relative to the foregoing shall be between the attorneys exclusively.

"That when the said children reach the age of attendance at preparatory school or college they may attend such institution as plaintiff and defendant shall mutually agree upon, provided that the defendant shall pay all living and other expenses, including tuition, connected therewith.

"If the circumstances of the plaintiff should change so that the maintenance and support of said children is burdensome and shall so request the defendant in writing, defendant shall furnish said children with a home and shall support them and thereafter plaintiff shall have the same rights of visiting said children as above provided for defendant.

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED:

"That all questions of property rights existing

between the parties are settled, determined and adjudicated in the manner provided in the stipulation and agreement of the parties filed herein and the said settlement and determination therein is herein and hereby made the order, judgment and decree of this Court."

On 7 June 1924, Mr. Bay died. In October of that year, William Jay Madden, Jr. adopted James H. Bay, Jr., then 13, and Audrey H. Bay, then 10, who were thereafter known as James H. Madden and Audrey H. Madden. William Jay Madden, Jr. died on 22 July 1938 and James H. Madden died on 14 February 1953.

In simple terms, it is Mr. Peter H. Madden's contention that the 1920 Nevada divorce was invalid, and that as a consequence, the two daughters of Mrs. Madden's — his grandmother's — second marriage are not the lawful heirs and next of kin of William R. Hammond, and cannot share in the distribution of the trust created by him. The chancellor (Ross, J.) did not see it quite that way, and neither do we.

The simple answer to Mr. Madden's contention is that the Nevada decree was not void, but presumptively valid until judicially impeached, *Cook v. Cook*, 342 U. S. 126, 128-29 (1951); *Williams v. North Carolina*, 325 U. S. 226, 233-34 (1945); *Dackman v. Dackman*, 252 Md. 331, 336-37, 250 A. 2d 60, 63 (1969); *Brewster v. Brewster*, 204 Md. 501, 505, 105 A. 2d 232, 234 (1954). Moreover, the Nevada marriage, valid where entered into, was valid everywhere until similarly impeached, *Henderson v. Henderson*, 199 Md. 449, 458, 87 A. 2d 403, 408 (1952); *Bannister v. Bannister*, 181 Md. 177, 180, 29 A. 2d 287, 288 (1942).

James Holmes Bay, who might have successfully challenged the validity of the Nevada decree, chose not to do so. When given an opportunity in 1922 to do just that, he chose instead to enter a general appearance in Nevada, through counsel, for the purpose of seeking a modification of the decree: a modification which had to presuppose the validity of the decree entered two years earlier, and both

restated and reaffirmed it. As a result of Bay's actual participation in the divorce proceeding,[3] he could not have attacked the validity of the divorce decree thereafter in Nevada, *Kernan v. Kernan*, 78 Nev. 93, 97, 369 P. 2d 451, 454 (1962); *Gulling v. Washoe County Bank*, 29 Nev. 257, 266, 89 P. 25, 28 (1907);[4] *see also Day v. Day*, 237 Md. 229, 234, 205 A. 2d 798, 801 (1965); *Weber v. Weber*, 110 N.Y.S.2d 729 (Sup. Ct., Kings Co. 1951); *see generally* Annot., 28 A.L.R.2d 1303, 1322-25 (1953). Even assuming that the appellant is correct when he says that the recitals in the amended decree do not conclusively establish the jurisdiction of the Nevada court over Bay, the amended decree, obviously entered in a proceeding in which both Bay and Mrs. Madden participated, was res judicata as between them. *See, e.g., Bass v. Hoagland*, 172 F. 2d 205, 208 (5th Cir.), *cert. denied*, 338 U. S. 816 (1949) (presumption that recitals are correct may be overcome by examination of the record).

In view of the fact that the Nevada decree was insulated from subsequent attack in Nevada by either Bay or Mrs. Madden, neither of them would have been permitted to collaterally attack that decree in a state other than Nevada, *Coe v. Coe*, 334 U. S. 378, 384 (1948); *Sherrer v. Sherrer*, 334 U. S. 343, 351-52 (1948); *Leatherbury v. Leatherbury*, 233 Md. 344, 346-47, 196 A. 2d 883, 884 (1964). Additionally, under *Johnson v. Muelberger*, 340 U. S. 581, 587 (1951), appellant, a stranger to a divorce proceeding in which both parties appeared, may not collaterally attack the validity of

---

**3.** *Compare* the situation present in this case *with* Pelle v. Pelle, 229 Md. 160, 182 A. 2d 37 (1962) (defendant-spouse permitted to attack foreign divorce in which she had participated unknowingly); *and* Colby v. Colby, 217 Md. 35, 141 A. 2d 506, *cert. denied*, 358 U. S. 838 (1958) (defendant-spouse permitted to attack foreign divorce in which he had not participated).

**4.** The res judicata effect of the amended decree would also have precluded Bay from subsequently attacking the Nevada court's finding that Mrs. Bay was a domiciliary of Nevada, and thereby conferring the necessary jurisdiction which the court needed to grant her a valid divorce, even though that issue was not actually litigated by Bay, Wolford v. Wolford, 65 Nev. 710, 714, 200 P. 2d 988, 990 (1948). The res judicata effect of the decree must be determined by application of Nevada law, Restatement (Second) of Conflict of Laws § 73 (1971); *cf.* Coane v. Girard Trust Co., 182 Md. 577, 583, 35 A. 2d 449, 452 (1944); Duvall v. Fearson, 18 Md. 502, 504-05 (1862).

the decree resulting from that action unless the courts of Nevada would permit such an attack, *Leatherbury v. Leatherbury, supra,* 233 Md. at 347, 196 A. 2d at 884. Since Nevada, by statute, prohibits all third-party attacks on Nevada divorce decrees that are binding on the parties to the divorce action, Nev. Rev. Stat. tit. 11, ch. 125, § 125.185 (1967), appellant may not collaterally attack such a decree in Maryland.

> *Decree affirmed, costs to be paid*
> *by appellant.*