DOUGLAS R. SMALL, JR. ET UX. v. CIAO STABLES,
INC. ET AL.

[No. 26, September Term, 1980.]

*Decided February 20, 1981.*

*Motion for reconsideration filed March 20, 1981; denied March 31, 1981.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, COLE, DAVIDSON, and RODOWSKY, JJ.

*Richard A. Reid,* with whom were *Royston, Mueller, McLean & Reid* on the brief, for appellants.

*Neil J. Dilloff* for appellees.

RODOWSKY, J., delivered the opinion of the Court.

In this case we hold, applying New York law, that partially disclosed principals, who sold a race horse through an agent-auctioneer, are barred from suing the buyer for the purchase price by the rescission of the sales contract adjudged by a New York court in the buyer's action against the auctioneer, of which the sellers had actual knowledge but to which they were not parties.

Appellants, Douglas R. Small, Jr. and Susan C. Small (the Smalls), residents of Pennsylvania, on March 28, 1977 executed a consignment contract with Fasig-Tipton Co., Inc. (Fasig) of Elmont, Long Island, New York.[1] Fasig is an auctioneer of thoroughbred horses. The subject of the consignment was Wahini, a bay filly foaled in April of 1975. She was to be sold at the Maryland spring sale of selected two-year-olds in training to be conducted under the auspices of the Maryland Horse Breeders' Association, Inc. This sale was scheduled for May 16 and 17, 1977 at the sales pavilion on the fairgrounds at Timonium, Maryland. In the consignment contract the Smalls specified that Wahini was to be sold in the name of "Thomas Bowman, DVM, Agent." By that contract the Smalls agreed to be bound by the provisions of sale printed on the contract and acknowledged that they had read the terms of sale. In the contract Fasig was appointed agent of the Smalls to sell Wahini and was given "full authority to transfer title thereto and to receive the proceeds of such sale" for the account of the Smalls. Fasig's commission was a percentage of the accepted bid.

Appellee is Ciao Stables, Inc. (Ciao), a New York corporation, whose president was Theodore Shapiro. Shapiro obtained a sales catalogue for the auction sale at Fasig's offices in Elmont. The sales catalogue listed Wahini as "Hip No. 11" and stated she was "[c]onsigned by Thomas Bowman, D.V.M., Agent." Shapiro came to Timonium on

---

1. The state in which the contract was made is not furnished by the record or by the parties.

Sunday, May 15, 1977 and determined to bid on Wahini. Because Shapiro had to return to New York, he authorized his friend, Daniel Marentette, to bid for him. Wahini was knocked down to Marentette, as agent for Ciao, for $35,000 on Monday, May 16. Shapiro had arranged with Fasig for Fasig to extend credit to Ciao for the purchase price. It was the obligation of Ciao to transport Wahini from the auction site. Wahini was taken to Sagamore Farms in Baltimore County, Maryland and boarded there until she was shipped to Belmont Park in New York where she arrived on May 26. After purchase, Shapiro did not see Wahini work out until June 6. As the horse galloped by in that workout, Shapiro heard a noise which he interpreted to be a wind defect. An endoscopic examination of Wahini was made on June 8 by a veterinarian who reported finding a "left laryngal hemiplegia ('roarer')" or wind defect.[2] That day Ciao tele-grammed Fasig in Elmont advising that Wahini suffered from a wind condition and that it was cancelling payment,[3] and requested instructions for returning the filly. Fasig's reply letter of June 15 requested payment and referred to the conditions of sale which required notice of a defect to be given within 7 days from the date of the sale.[4]

---

**2.** The affidavit of the Smalls' veterinarian advises that the condition described is a paralysis of the larynx.

**3.** Ciao stopped payment on its check for the purchase price and sales tax which had been issued June 2, 1977.

**4.** The acknowledgment of purchase of Wahini signed by Marentette on May 16 provided that the bid was subject to the conditions of sale printed in the sale catalogue. Condition 7th reads in part:

"Unless otherwise announced at the time of sale, there is no guarantee of any kind as to the soundness or condition or other quality of any horse sold in this sale except that horses which are unsound in eyes or wind . . . must be so announced."

Condition 8th reads in part:

"Any horse sold in this sale whose condition must be announced as provided for at CONDITION SEVENTH above, and is not so announced, shall be subject to return to consignor with refund of purchase price . . . provided that immediately on learning of such defect buyer shall forthwith notify [Fasig] in writing with veterinary certificate as to defect attached, such notification to be given within seven days of sale. All warranties of whatever sort shall terminate seven days from date of sale after which purchaser shall have no right of return of any animal for any reason whatsoever."

Thereupon Ciao, on July 8, 1977, brought an action against Fasig in the Supreme Court of the State of New York, New York County. The complaint alleged breach of the terms of sale and of an express warranty for which Ciao sought rescission of the sales contract and damages for the expenses incurred in the maintenance and care of Wahini. The Smalls admit that they knew of the New York action against Fasig. They never attempted to intervene. The New York case was tried to a jury and resulted in a judgment entered on July 5, 1979 in favor of Ciao against Fasig for $7,500, plus costs. The New York court further adjudged that the agreement between Ciao and Fasig of May 16, 1977 "be and the same hereby is rescinded . . . ."[5] Wahini was resold by Fasig for $24,000 and the net proceeds were credited to the Smalls.

The Smalls brought suit in the Circuit Court for Baltimore County against Fasig for the purchase price on December 23, 1977. A summary judgment was entered in favor of Fasig which was affirmed by the Court of Special Appeals in an unreported opinion filed March 9, 1979 (No. 610, September Term, 1978).

The action out of which the instant appeal arises was brought by the Smalls against Ciao on June 29, 1978 in the Circuit Court for Baltimore County. Summary judgment was entered in favor of Ciao against the Smalls for costs on the ground that the New York judgment was res judicata. The Court of Special Appeals affirmed in an unreported opinion (No. 849, September Term, 1979, filed March 20, 1980). We granted certiorari.[6]

----

It is undisputed that no announcement of any wind condition was made as to Wahini at the sale.

**5.** The judgment of the New York trial court was affirmed on appeal. CIAO Stables, Inc. v. Fasig-Tipton Co., 429 N.Y.S.2d 336 (App. Div. 1st Dept. 1980).

**6.** The suit by the Smalls against Ciao also joined Marentette as a defendant. Ciao impleaded Fasig as a third party defendant in this case and Fasig counterclaimed against the Smalls, Ciao and Marentette. In the circuit court, summary judgment was entered in favor of Marentette on the Smalls' claim because he acted for a fully disclosed principal and made no personal contractual promises. This judgment is not contested.

Only the judgments for costs in favor of Ciao and Marentette against the Smalls which were entered September 6, 1979 have been certified as final

The Smalls contend that the issues in the instant action are not the same as the issues in the New York case. The only portions of the record in the New York action which are part of the record in this case are the complaint, a memorandum opinion of the New York trial court denying motions by Fasig, the judgment of the trial court and the mandate of the intermediate appellate court. While the basic position of the Smalls is that Wahini was not suffering from a wind condition on the date of sale, they also assert that their representations to Fasig contained in the printed consignment contract prepared by Fasig did not include anything about wind condition; that it was Fasig's obligation to determine whether, after causing Wahini to be galloped, special announcements about wind condition were to be made at the time of sale; and that the failure to announce any wind condition results in independent liability of Fasig to Ciao, without recourse either by Ciao or Fasig against the Smalls. This analysis is directed primarily to the relationship between Fasig and the Smalls which is not before us. Ciao is not a party to the consignment contract, but only to the contract effected at the auction sale. The Smalls are a party to that auction sale contract as well as Fasig.

When the Smalls consigned Wahini with instructions that she be sold in the name of "Thomas Bowman, DVM, Agent" and the sales catalogue so stated, it was clear that Fasig was not selling *as* a principal. Fasig was selling *for* a principal, but the identity of that principal was not disclosed. Fasig was therefore acting as agent for a partially disclosed principal. Restatement (Second) of Agency § 144 (1957). "Unless otherwise agreed, a disclosed or partially disclosed principal

---

for immediate appeal pursuant to Md. Rule 605. The order for appeal of the Smalls, however, recites that it is also noted "from the Order entered on June 5, 1979, denying Plaintiffs' Motion for Summary Judgment." The denial of a motion for summary judgment is not an appealable order. Merchants Mortgage Co. v. Lubow, 275 Md. 208, 212, 339 A.2d 664, 667 (1975); Lawrence v. Dept. of Health, 247 Md. 367, 371-72, 231 A.2d 46, 48-49 (1967).

Thus, the only issues properly before this Court relate to the entry of summary judgment in favor of Ciao, even though the grant of certiorari embraced issues which relate to the denial of the Smalls' motion for summary judgment and which were briefed and argued.

is a party to a contract, if not negotiable or sealed, made by his agent within his authority." Restatement (Second) of Agency § 147 (1957). Application of this principle was the basis of decision in *Wheaton Lumber Co. v. Metz,* 229 Md. 78, 181 A.2d 666 (1962) in which the issue was whether an unsatisfied judgment for a purchase price, obtained by the third party against an agent for a disclosed or partially disclosed principal, barred a subsequent action for the price against the principal. We held it did not. A rule of election applicable in similar situations in which the contract sued upon was made with an agent for an undisclosed principal, is not applicable to partially disclosed principals. We adopted the rationale in comment *a* to § 184 of the Restatement (Second) of Agency which states in part:

> But there is no room for a doctrine of election in the case of the disclosed or partially disclosed principal. In this case, *the third person has a contract with the principal* unless he chooses the sole responsibility of the agent at the time of making the contract. (Emphasis supplied.) [7]

The New York judgment had by its terms rescinded the contract of May 16, 1977 to which the Smalls were parties. That is the contract on which the Smalls sue Ciao in the instant action. As we see it, the question presented is more fundamental than whether the issues in the New York action and in the present case have a sufficient identity. The question is whether, as a result of the New York judgment of rescission, the Smalls have any cause of action at all based on the auction sale contract. This turns on whether the New

---

**7.** The comment concludes by stating that if the third party does not elect the sole responsibility of the agent "and if the agent is a party to the contract together with the principal, [the third party] does not have alternative contracts, as may be the result in the case of the undisclosed principal, but either a joint contract with the agent and principal or a separate contract with each." However, Restatement (Second) of Agency § 321 (1957) states that "[u]nless otherwise agreed, a person purporting to make a contract with another for a partially disclosed principal is a party to the contract." Here there is no evidence that Ciao agreed that Fasig would not be a party to the sale contract, or that there would be a separate contract with Fasig. As a result both Ciao and Fasig are parties to the sales contract with the Smalls.

York judgment is binding on the Smalls who were not parties to the New York action. It leads us to the principal issue in the case, namely, whether the Smalls were in privity with Fasig or are otherwise precluded by the New York judgment from litigating their claim based on that contract.

Both parties have relied on authorities which direct us to New York law to determine whether the Smalls are in privity with Fasig under the New York judgment. The Smalls have quoted Restatement of Conflict of Laws § 450, comment *d* (1934) (The law of the state where a valid judgment is rendered determines who are in privity with the parties to the judgment). Ciao cites *State of Maryland ex rel. Gliedman v. Capital Airlines, Inc.,* 267 F. Supp. 298, 302-303 (D. Md. 1967) which is to the same effect. Further, the trial court applied New York law in resolving what it described as a split of authority on whether a judgment which is being appealed can be applied as res judicata. This Court, in a case dealing with a Nevada divorce decree, observed that the "res judicata effect of the decree must be determined by application of Nevada law . . . ." *Madden v. Cosden,* 271 Md. 118, 124 n.4, 314 A.2d 128, 132 n.4 (1974). *See also Pallen v. Allied Van Lines, Inc.,* 223 F. Supp. 394, 396 (S.D.N.Y. 1963); *Gart v. Cole,* 166 F. Supp. 129, 132 (S.D.N.Y. 1958), *aff'd,* 263 F.2d 244 (2d Cir.), *cert. denied,* 359 U.S. 978, 79 S. Ct. 898, 3 L. Ed. 2d 929 (1959); Restatement (Second) of Conflict of Laws § 94 (1971) ("What persons are bound by a valid judgment is determined, subject to constitutional limitations, by the local law of the State where the judgment was rendered."). In view of the position which the parties have taken in this Court, and apparently below, we shall apply New York law.

Neither party has referred us to a New York decision which involves a fact situation like the one presented here, and we have not found one. The Smalls, referring to 2 F. Mechem, *The Law of Agency* § 2141 (2d ed. 1914) entitled, "Principal not bound by judgment respecting property rights against agent in action to which he was not a party," quote the following proposition:

> A principal and his agent are not in privity with
> each other respecting property rights, and a judg-

ment against the agent cannot settle the rights of the principal, if he is not made a party to the action in which it was obtained, and has not intervened or appeared therein. [Footnotes omitted.]

But in the immediately following section, Mechem states the rule is otherwise as to contract rights. Section 2142 of the same work states that "[i]f in an action to which the agent is a party, [the principal's] rights have been determined under it, that determination would ordinarily be conclusive against the principal, unless he could impeach the judgment for fraud or collusion." In support Mechem cites *Lippman v. Campbell,* 40 Mo. App. 564 (1890) and *Moore v. Richardson,* 100 Ill. App. 134, *appeal dismissed,* 197 Ill. 437, 64 N.E. 330 (1902). However, in each of those cases the principal appears to have been undisclosed.

Ciao takes the position that it is simply trying to use res judicata defensively in the present action against it by the Smalls. Citing *Israel v. Wood Dolson Co.,* 1 N.Y.2d 116, 151 N.Y.S.2d 1, 134 N.E.2d 97 (1956) (judgment against plaintiff in action for breach of contract bars plaintiff's subsequent action against third party for malicious interference), Ciao says that lack of mutuality does not prevent the operation of collateral estoppel in New York. *Israel,* however, was a case in which the determination in the prior litigation was applied against *a party* to the prior action. Other New York decisions which have applied collateral estoppel, absent mutuality, have done so against a party to the prior action. *See Schwartz v. Public Administrator,* 24 N.Y.2d 65, 298 N.Y.S.2d 955, 246 N.E.2d 725 (1969); *B.R. DeWitt, Inc. v. Hall,* 19 N.Y.2d 141, 278 N.Y.S.2d 596, 225 N.E.2d 195 (1967) and *Good Health Dairy Products Corp. v. Emery,* 275 N.Y. 14, 9 N.E.2d 758 (1937). Simply because New York no longer requires mutuality for collateral estoppel does not resolve the problem here. The problem is whether the judgment of rescission against Fasig in the prior case would be applied by New York against the Smalls so as to bar their subsequent action on the same contract.

Recent New York decisions, and the decisions of federal courts in New York, where the question has been whether

claim or issue preclusion is to be applied in subsequent litigation against a non-party to prior litigation, have applied a representation analysis. As expressed in Restatement (Second) of Judgments § 85 (T.D. No. 2, April 15, 1975):

> (1) A person who is not a party to an action but who is represented by a party is bound by and entitled to the benefits of the rules of res judicata as though he were a party. A person is represented by a party who is:
>
> . . . .
>
> (b) Invested by the person with authority to represent him in an action . . . .[8]

In a case in which a non-party was held to be in privity with a party to prior litigation, based on control of the prior litigation by the non-party, the Court of Appeals of New York described res judicata as follows:

> Generally speaking, the doctrine of *res judicata* gives "binding effect to the judgment of a court of competent jurisdiction and prevents the parties to an action, and those in privity with them, from subsequently relitigating any questions that were necessarily decided therein" (Matter of Shea, 309 N.Y. 605, 616, 132 N.E.2d 864, 868). It has been said that the term *privity does not have a technical and well-defined meaning.* It denominates a rule, how-

---

8. Other relationships set forth in the tentative draft of § 85 for Restatement (Second) of Judgments are:

(a) The trustee of an estate or interest of which the person is a beneficiary; or

. . . .

(c) The executor, administrator, guardian, conservator, or similar fiduciary manager of an interest of which the person is a beneficiary; or

(d) An official or agency invested by law with authority to represent the person's interests; or

(e) The representative of a class of persons similarly situated, designated as such with the approval of the court, of which the person is a member.

ever, to the effect that under the circumstances, and for the purposes of the case at hand, a person may be bound by a prior judgment to which he was not a party of record (Restatement, Judgments, § 83, Comment *a*). *It includes* those who are successors to a property interest, those who control an action although not formal parties to it, *those whose interests are represented by a party to the action,* and possibly coparties to a prior action (Restatement, Judgments, §§ 81-90). [*Watts v. Swiss Bank Corp.,* 27 N.Y.2d 270, 277, 317 N.Y.S.2d 315, 320, 265 N.E.2d 739, 743 (1970) (Emphasis supplied).]

A 1979 decision, *Gramatan Home Investors Corp. v. Lopez,* 46 N.Y.2d 481, 414 N.Y.S.2d 308, 386 N.E.2d 1328, occasioned review by the highest court of New York of its law of collateral estoppel, merger and bar as components of the broader doctrine of res judicata. In the course of holding that the assignee of a contract was not bound by a judgment against the assignor in an action instituted after the assignment and to which the assignee was not a party, the court stated:

One of the fundamental principles of the system of justice is that every person is entitled a day in court notwithstanding that the same issue of fact may have been previously decided between strangers. Generally, therefore, a person may not be precluded from litigating issues resolved in an action in which that person was not a party [cit. om.]. Considerations of due process prohibit personally binding a party by the results of an action in which that party has never been afforded an opportunity to be heard [cit. om.]. *This prohibition, of course, is not unconditional and identity of the parties, as opposed to identity of the issues, is not an absolute. [Id.* at 485-86, 414 N.Y.S.2d at 311, 386 N.E.2d at 1331-1332 (Emphasis added).]

Applications of the representation theory under New York law are found in the following cases. Privity was found be-

tween a union and certain of its members in *Weisz v. Levitt,* 59 App. Div. 2d 1002, 399 N.Y.S.2d 720 (1977). That case was a challenge to the constitutionality of a statute which excluded lump sum payments for accrued overtime credits from the computation of final average salary for retirement purposes of New York State employees. A prior action by the Civil Service Employees Association advancing that same contention had been tried and lost. Though the plaintiff in the second action was not a party in the first action, res judicata was applied. Citing the representational language in *Watts v. Swiss Bank Corp., supra,* the court held that the interests of the plaintiff "were adequately protected in the first action by his Union, CSEA, and he is now barred from maintaining this action." 59 App. Div. 2d at 1003, 399 N.Y.S.2d at 721.

In *Gable v. Raftery,* 65 N.Y.S.2d 513 (Sup. Ct., Westchester Co. 1945) there was privity between teachers and their board of education employer. The Yonkers City Board of Education determined to comply with budgetary restrictions by terminating the 27 teachers in grades 1 through 6 who had the least seniority. Dismissed teachers appealed to the State Commissioner of Education and contended that teachers in grades 7 and 8 should be included in the group from which terminations, based on lack of seniority, would be made. The plaintiffs, who would suffer termination if the aggregate of teachers within which seniority was determined were enlarged, received notice of the appeal but did not intervene. When the State Commissioner directed that the larger group be the basis of consideration, the plaintiffs were terminated and brought suit. It was dismissed on the basis of res judicata. The court quoted from *Ashton v. City of Rochester,* 133 N.Y. 187, 193, 30 N.E. 965, 967 (1892) (a case holding that residents of a special benefit assessment district were represented by, and in privity with, municipal officials in a prior proceeding):

"The only question is whether [the prior judgment] bound these plaintiffs, who are not parties by name. But the judgment of a court of competent jurisdiction will sometimes operate as an estoppel and a

former adjudication against persons who are not named in the proceeding, and who are not parties to the record by name. It is enough if they were represented in the action or proceeding which resulted in the judgment, or were entitled to be heard." [65 N.Y.S.2d at 518.]

*Gable* held that the plaintiff teachers were privies to the Yonkers Board of Education in the proceeding before the State Commissioner. The Yonkers Board was said to have been "vitally interested in obtaining the same result, now sought by the petitioners[,] for the contrary decision required the payment by it of back salaries to other teachers." *Id.* at 519.

*Expert Electric, Inc. v. Levine,* 554 F.2d 1227 (2d Cir.), *cert. denied,* 434 U.S. 903, 98 S. Ct. 300, 54 L. Ed. 2d 190 (1977) revolved around an apprentice electrician training program administered by a joint apprenticeship committee (JAC) comprised of officials of an electrical contractors trade association and of a union. The State Labor Department decertified the program in proceedings to which only the JAC and the trade association were parties. Decertification was affirmed on judicial review in the state courts. The plaintiffs, individual electrical contractors, then sought to enjoin the decertification by action in the federal court. They were held to be bound by the state court judgment to which they were not parties on the following rationale:

The threshold requirement of identity of parties, qualified by the doctrine of privity, finds its roots in the ancient notion, now supplemented by the due process clause, that a person cannot be bound by judgment without notice of a claim and an opportunity to be heard. Whether such identity is evident is a factual determination of substance, not mere form . . . . Generally speaking, one whose interests were adequately represented by another vested with the authority of representation is bound by the judgment, although not formally a party to the litigation . . . . While often justified by the doctrine

of privity, *the theory underlying this general proposition is that the party bound is in substance the one whose interests were at stake in prior litigation.* Therefore, we need first examine, in order to determine whether there was an identity of parties between the state and federal court actions, the degree of representative authority vested in the sponsor JAC to administer the terms of the program. [*Id.* at 1233 (Emphasis added).]

Because the JAC was the participating electrical contractors "conduit" to the State Labor Department, and because it was vested with authority over the training program's operation, the necessary authority was present. There was adequacy of representation because the only interests to be protected through the administrative and judicial process were those of the contractors participating in the program.

In a case in which a nursing home operator sought to enjoin recoupment of reimbursement funds by the State of New York on the ground that a retroactive reduction in the per diem reimbursement rate under Medicaid was invalid, it was held that res judicata applied, based upon a state court judgment which had validated the retroactive reduction. Although the plaintiff was not a party to the prior action, it was held that his interests were identical with, and adequately represented by, the trade association of nursing home operators in which the plaintiff was a member and which was a party to the prior proceeding. *Grossman v. Axelrod,* 466 F. Supp. 770 (S.D.N.Y. 1979). *See also Roode v. Michaelian,* 373 F. Supp. 53 (S.D.N.Y. 1974) (plaintiff's civil rights action based on wrongful termination for union activities held to be barred by a judgment against the Public Employees Relations Board in an action brought to enforce its reinstatement order, in which the Board was acting solely on the plaintiff's behalf and representing her interests, although she was not a formal party).

In the instant matter the interests of Fasig and the Smalls are identical *vis-a-vis* Ciao. *Cf. Hansberry v. Lee,* 311 U.S. 32, 61 S. Ct. 115, 85 L. Ed. 22 (1940). Both Fasig and the

Smalls had a common interest in proving that Wahini had no wind condition at the time of sale and in asserting the contract defense based on the 7 day period within which notice of a claimed defect must be given by the buyer. In the claim by Ciao against Fasig, if the jury finds that there was a wind condition at the time of sale, the conflict whether the failure to announce it is attributable to Fasig or to the Smalls is immaterial. If quality of the representation is a factor in adequacy of representation, the record in this case shows that Fasig attempted to have the New York action stayed or dismissed, because of the pendency of litigation in Maryland, where the Smalls say all interested parties should have litigated. The record also shows that Fasig defended the Ciao case before a jury and then fully pursued an appeal from the adverse judgment. There are no facts in the Smalls' affidavits challenging the quality of the defense in New York. We therefore believe that the summary judgment in favor of Ciao should not be disturbed for inadequacy of representation. *Grossman v. Axelrod, supra,* 466 F. Supp. at 776.

The thrust of the Smalls' attack is that Fasig had no authority to represent the Smalls in the New York action. No special facts are set forth in the affidavits bearing on this point. Its resolution depends on the documents and the nature of the relationship which was created between the Smalls and Fasig.

In the consignment contract, the Smalls authorized Fasig to settle claims of misrepresentation.[9] The terms of sale, which were incorporated into the consignment contract, contain an authorization for Fasig to sue on the sales contract.[10]

---

**9.** The provision reads, "I further agree that in the event the purchaser of any animal sold by me in the named sale shall give notice of refusal to pay for such animal because of claim of misrepresentation or defect of such animal, Fasig-Tipton Company, Inc. may withhold payment of net proceeds of sale of such animal until settlement by it of such claim . . . ."

**10.** The 6th term of sale provides in part:

Any horse purchased by a defaulter may be resold by [Fasig] at public or private sale without notice for purchaser's account, costs of such resale to be borne by defaulter. Should such sale fail to satisfy the defaulter's account in full, defaulter shall pay forthwith to

Further, the Smalls consigned Wahini for sale through an auctioneer under circumstances whereby the Smalls remained only partially disclosed as sellers. The resulting contract of sale with Ciao is one in which the promise by Ciao to pay the purchase price is made to Fasig. Thereby, Fasig was authorized to sue on the contract. The applicable rule, as stated in Restatement (Second) of Agency § 364, is that "[a] person with whom an agent makes a contract on behalf of a principal is subject to liability in an action brought thereon by the agent in his own name on behalf of the principal if the agent is a party promisee." Comment *e* to § 364 deals specifically with factors and auctioneers and states:

> Ordinarily, a factor or auctioneer can maintain an action in his own name against a person to whom he has sold goods . . . . Frequently the factor or auctioneer is acting for an undisclosed or partially disclosed principal. In such cases, since he is a promisee, his power to bring suit is clear.

This Court applied the rule in *U.S. Telegraph Co. v. Gildersleve,* 29 Md. 232, 245 (1868), where we said:

> And where an agent is thus interested, as for commissions, or by reason of special property in the subject matter, and the contract, in reference thereto, is made in his name, it is perfectly competent for him to sue and maintain an action in his own name, as if he were the principal. This is so in the case of a factor, or a broker, or a warehouseman, or a carrier, or auctioneer . . . . So where a contract is in terms, as in this case, made with an agent personally, he may sue thereon . . . .

The agent who is authorized to sue in his own name on behalf of his principal "recovers as trustee for his principal." *Id.* at 246.

---

[Fasig] the amount owing . . . failing which [Fasig] may bring suit against defaulter; should [Fasig] prevail, defaulter shall pay all reasonable attorney's fees and costs of such litigation.

We believe the rule stated above applies in the instant matter. We see no difference between this case, in which Ciao sued Fasig for rescission of the sales contract, and a case in which Fasig might bring suit for the purchase price and find itself required to defend a counterclaim seeking rescission or faced with a defense to the action based on misrepresentation. It has been held that the authority to sue implies the authority to defend. *City of Carthage ex rel. Cook v. Weesner,* 116 Mo. App. 118, 92 S.W. 178 (1906); *Cressler v. Brown,* 79 Okla. 170, 178, 192 P. 417, 425 (1920).

One New York court has held that the authority of a factor to sue for the purchase price includes authorization to recover, in his own name, discriminatory freight overcharges levied against his principals for transport of the consigned goods to him, and that any judgment in the case would be binding on his principals. *See Hewitt v. N.Y., N.H. and H.R. Co.,* 166 Misc. 186, 1 N.Y.S.2d 292 (1937), *aff'd,* 258 App. Div. 712, 14 N.Y.S.2d 991 (1939), *aff'd on other grounds,* 284 N.Y. 117, 29 N.E.2d 641 (1940), where the court said:

> Defendant also contends that the plaintiff is not entitled to maintain this action in his own right. The evidence clearly shows that plaintiff was a factor. The grapes were consigned to him for sale to others and it was part of his duty to collect the full amount that could possibly be realized. That duty includes the prosecution of this action. As trustee of an express trust he appears to have the right under Civil Practice Act, § 210, to sue in his own name. As a factor he has a special property interest in the subject-matter. He is accountable for all the proceeds. *Any judgment entered herein will bar actions by the consignors.* A full and final determination by this court should obviate a multiplicity of burdensome litigations between residents of California and this defendant over whom the courts of that state have no original jurisdiction. [*Id.* at 189-90, 1 N.Y.S.2d at 295 (Emphasis added).]

Because Fasig adequately represented and was authorized to be a representative of the Smalls in the New York action, of which they had actual notice, we conclude that, under New York law, the Smalls were in privity with Fasig in the New York action and that the Smalls are bound by the New York judgment.

It has neither been briefed nor argued by the Smalls that the New York judgment could not operate against them on the ground that New York could not acquire jurisdiction over the person of the Smalls, had Ciao attempted to do so, and we express no opinion on that question.

*Judgment of the Court of Special Appeals affirmed.*
*Costs to be paid by the appellants.*