409 So.2d 487 (1981)
In re ESTATE OF Leonard SCHORR, Deceased.
No. 79-1889.
District Court of Appeal of Florida, Fourth District.
September 30, 1981.
Rehearing Denied March 3, 1982.
*488 Eden & Rubin, Tamarac, and Joel L. Kirschbaum of Esler, Kirschbaum & Pomeroy, Fort Lauderdale, for appellant Sadie Smolev.
Leonard Feiner, Fort Lauderdale, for appellees Jerome Schorr and Doris Johnsen.
HURLEY, Judge.
Sadie Smolev Schorr, the alleged second wife of Leonard Schorr, challenges an order which declares that she is a tenant in common, rather than a sole owner, of certain property in Tamarac, Florida. We affirm.
Leonard Schorr married his first and only wife, Dora, in 1929. Then and afterwards, they were domiciliaries of New York State. In late August of 1970, Dora was committed to a mental hospital in New York. In 1972, while still institutionalized but not declared legally incompetent, Dora executed a special power of attorney appointing a Dominican Republic lawyer to represent her in divorce proceedings instituted in the Dominican Republic by Leonard. On February 29, 1972, the Court of First Instance of the Judicial District, Santa Domingo, Dominican Republic, decreed that Leonard and Dora Schorr were divorced. Leonard immediately returned to New *489 York and continued to reside there for the next year.
In 1973 Leonard and appellant, Sadie Smolev Schorr, moved to Broward County, Florida where they held themselves out as husband and wife. At no time, however, did Leonard marry Sadie Smolev. Yet, in 1973 a warranty deed was executed conveying property which is the subject of this controversy from a developer to "Leonard Schorr and Sadie Schorr, his wife." This parcel, located at 7006 N.W. 89th Avenue, Tamarac, Florida, was the Florida residence of Leonard Schorr and Sadie Smolev Schorr.
On September 10, 1975, Leonard and Sadie executed a quitclaim deed which purported to convey the residential property to themselves "as joint tenants with rights of survivorship." Thereafter, Leonard died on October 17, 1976. Sadie then claimed and took complete possession of the property as the surviving joint tenant.
Next, Leonard's son, Jerome, individually and as the personal representative of his father's estate, filed a petition to declare that Leonard's interest in the property was subject to homestead. The rationale underlying this contention was that the Dominican Republic divorce was invalid and, as a consequence, Leonard's and Sadie's effort to convey the property to themselves as joint tenants without obtaining Dora's joinder in the deed, rendered the conveyance invalid. Thus, Jerome claimed that Dora and Sadie were tenants in common. The trial court concurred.
Whether the property is Sadie's alone, as surviving joint tenant, or must be shared by Sadie and Dora as tenants in common, hinges upon Leonard's marital status at the time of his death. As noted, the trial court found that Leonard remained married to Dora. We agree.
States are not required to give full faith and credit to divorces rendered in foreign nations. Whether a state will give force and effect to a foreign divorce decree is solely a question of comity. Parker v. Parker, 155 Fla. 635, 21 So.2d 141 (1945), cert. denied, 326 U.S. 718, 66 S.Ct. 23, 90 L.Ed. 425 (1945); Schwartz v. Schwartz, 143 So.2d 901 (Fla.2d DCA 1962). To actuate the doctrine of judicial comity a foreign judgment must partake of the elements which would support it if procured in this country. For example, the grounds relied upon must be sufficient under Florida law and the petitioning party must satisfy the jurisdictional requirements relating to domicile. Pawley v. Pawley, 46 So.2d 464 (Fla.), cert. denied, 340 U.S. 866, 71 S.Ct. 90, 95 L.Ed. 632 (1950); Kittel v. Kittel, 194 So.2d 640 (Fla.3d DCA 1967), cert. discharged, 210 So.2d 1 (Fla. 1967); Annot., 13 A.L.R.3d 1419 (1967). It has long been held that Florida courts will not recognize a foreign nation's divorce decree unless at least one of the spouses was a good faith domiciliary of the foreign nation at the time the decree was rendered. 26 Fla.Jur.2d Family Law § 798 (1981); Schwartz v. Schwartz, supra; Kittel v. Kittel, supra; accord, Williams v. North Carolina, 325 U.S. 226, 65 S.Ct. 1092, 89 L.Ed. 1577 (1945).
In the instant case, it is clear that Leonard was not a good faith domiciliary of the Dominican Republic. His stay there lasted only six days. He returned to New York immediately after the decree was rendered and remained there for more than a year before moving to Florida. Thus, it is demonstrable that Leonard had no intention of remaining in the Dominican Republic. Accordingly, the trial court was eminently correct in refusing to honor the Dominican Republic's decree, see Kittel v. Kittel, supra, and in concluding that Leonard remained married to Dora.
This brings us to the question whether the Florida property, which Leonard owned as a tenant in common, could be subject to homestead. We answer in the affirmative. See 29 Fla.Jur.2d Homesteads § 21 (1981). Although there must be a family for the homestead right to exist, Florida recognizes both a `family-in-law' and a `family-in-fact.' To determine whether either exists, one of the following two tests must be met: (1) there must be a legal duty to maintain another person because *490 of the family relationship, or (2) there must be a continuing communal living by at least two persons in which one is recognized as the person in charge. 29 Fla.Jur.2d Homesteads §§ 25-27 (1981). Limiting ourselves to a consideration of Leonard's status vis-a-vis Dora, it is certain that it satisfied the requirements for a family-in-law since Leonard had a legal obligation to support Dora. Leonard was under a New York court order to support Dora and the record indicates that, in fact, he did provide such support. Consequently, we hold that Leonard's interest in the property was subject to homestead and could not be conveyed without Dora's joinder. Art. X, § 4, para. (c), Fla. Const.
Accordingly, Leonard's effort to quitclaim the property to himself and Sadie as joint tenants with rights of survivorship was a nullity. Thus, his one-half undivided interest passed at his death to Dora, as a life estate, with his son, Jerome, receiving a vested remainder interest. The determination of the trial court was correct and its order is affirmed.
MOORE and GLICKSTEIN, JJ., concur.

ON MOTION FOR REHEARING
HURLEY, J.
Appellant, by motion for rehearing, suggested that the trial court and this court erred by failing to apply the decisional law of the State of New York regarding principles of comity and the validity of Dominican Republic divorces in the State of New York. Before reaching the merits of this contention, we afforded appellant an opportunity to supplement the record on appeal to demonstrate that she had properly requested the trial court to take judicial notice of and apply New York law. Apparently, a court reporter was not present in the trial court and efforts to reconstruct the record have proved unavailing. Therefore, since it is appellant's burden to provide an adequate record and to demonstrate error therefrom, the motion for rehearing is denied.
GLICKSTEIN and DELL, JJ., concur.