DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT
*July Term 2014*

**GORDON PHELPS KELLEY, III,**
Appellant,

v.

**JOANNA KELLEY,** individually, and **JOANNA KELLEY** and **NORTHERN TRUST BANK OF FLORIDA, N.A.,** as Co-Trustees of the Marital Trust created under the 2008 will; **BANK OF NEW YORK, CAMILLE WEISS** and **ERRETT VAN NICE,** as Co-Trustees of the Gordon P. Kelley, Jr., Agreement, **AMNESTY INTERNATIONAL OF THE U.S.A., INC., COUSTEAU SOCIETY** and **WORLD WILDLIFE FUND,**
Appellees.

Nos. 4D13-21
and 4D13-576

[September 10, 2014]

Consolidated appeals from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Mel Grossman, Judge; L.T. Case Nos. 10-0360-60 and 12-3958PRC.

Edward Downey and R. Lee McElroy, IV of Downey & Downey, P.A., Palm Beach Gardens, for appellant.

Bernard Allen and Frank T. Adams of Katz Barron Squitero Faust, Miami, for appellee Joanna Kelley.

James R. George and Tattiana Brenes-Stahl of Greenberg Traurig, P.A., Fort Lauderdale, for appelle, Northern Trust Bank of Florida, N.A.

Douglas F. Hoffman of Rudolf & Hoffman, P.A., for appellees Amnesty International of the U.S.A., Inc., Cousteau Society and World Wildlife Fund.

GROSS, J.

At issue is a third party's ability to collaterally attack a foreign state's judgment within the confines of the Full Faith and Credit Clause. Appellant Gordon Kelley III ("Gordon III"), a son disinherited under his

father's will, challenges two orders that dismissed his actions seeking to invalidate his father's exercise of a limited power of appointment on the grounds that his father was not legally married to his second wife, the intended beneficiary of the appointment. Specifically, Gordon III alleged his father's 1979 Nevada divorce to a prior wife was void since neither party satisfied that state's jurisdictional residency requirement, making the father's marriage to his current wife bigamous—and thus void as against public policy.

Focusing on the full faith and credit aspect of the claim, a collateral attack on a foreign state's judgment may be entertained only if the attack would be permissible in the foreign state. Since both Gordon III's father and his prior wife bound themselves to the divorce decree by participating in the Nevada proceeding and since, by statute, Nevada prohibits third-party attacks on divorce decrees binding upon the parties, so too Gordon III is barred from collaterally attacking the decree in Florida. Accordingly, we affirm.

### *Factual Background*

The seeds of this controversy were planted on February 23, 1956, when Gordon III's grandfather, Gordon P. Kelley ("Gordon I"), created the Gordon P. Kelley Trust Fund ("the Kelley Trust"), an irrevocable trust benefiting his children. Per the Kelley Trust's terms, upon Gordon I's death, the trust estate was split into separate trust funds, with each of his children receiving "so much of the net income of such funds as the Trustees in their discretion . . . deem[ed] reasonably necessary to provide for the[ir] support and education." Any remaining income not disbursed to the child would accumulate and be added to the child's trust principal.

The Kelley Trust conferred upon each child the limited testamentary power to appoint a beneficiary for the trust principal, with the limitation that the selection fall within four recipient classes: (1) Gordon I's lawful descendants, (2) the spouses of such descendants, (3) the child's spouse, or (4) certain charitable organizations. Failure to make a valid appointment would result in the principal being distributed to the child's descendants per stripes.

Relying upon this provision, Gordon III's father ("Gordon Jr.") exercised his power of appointment through Article IV(A) of his last will and testament ("the Will"), directing that his trust principal pass into a "Marital Trust." As defined within the Will, the Marital Trust dictated that Gordon Jr.'s wife, appellee Joanna Kelley ("Joanna"), receive discretionary income during her lifetime, with the remainder passing upon her death to

appellees Amnesty International of the U.S.A. Inc, the Cousteau Society, and the World Wildlife Fund. The Will expressly disinherited Gordon III.

### *Procedural Posture*

Following Gordon Jr.'s death, Joanna, as personal representative for his estate, petitioned for administration, requesting that the Will be admitted into probate. Not succumbing to his disinherited status, Gordon III responded by filing a petition in the probate court seeking (1) to revoke probate and (2) to declare the exercise of Gordon Jr.'s power of appointment improper as conferred under the Kelley Trust. In addition, Gordon III filed a complaint in the circuit court seeking declaratory relief pursuant to sections 86.041 and 736.0201(4)(e)-(f), Florida Statutes (2010), mirroring the language of the second amended petition's Count IV.

In Count IV, Gordon III sought a declaration finding Gordon Jr.'s exercise of his power of appointment invalid since Joanna was not his legal spouse, and thus was "not a permissible appointee" under the Kelley Trust. The count alleged that in 1979 Gordon Jr.'s first wife, Holly Burguieres, "appeared in Nevada for a 'quickie divorce'" and secured a divorce decree after falsely asserting she was a resident of Nevada. Evidence of the ruse was allegedly memorialized by a financial agreement confirmed and incorporated by the trial court in its final dissolution judgment, which reflects that Burguieres actually resided in Mexico City.

Alleging that neither Burguieres nor Gordon Jr. satisfied Nevada's six-week residency requirement, Gordon III contended the Nevada court lacked subject matter jurisdiction over their case, rendering the divorce decree void. Building upon this revelation, since Gordon Jr. was still legally "married" to Burguieres, his marriage to Joanna would be bigamous—and thus void as against public policy—making Gordon Jr.'s exercise of his power of appointment in Joanna's favor invalid, since she did not fall within the four classes of beneficiaries permitted by the Kelley Trust. As a result, Gordon III averred "all assets of the [Kelley Trust] are distributable to [himself] as the default taker."

### *The Trial Court's Order*

Upon the appellees' collective motions, the trial court entered an order dismissing Counts III[1] and IV of the second amended petition, confirming

---

[1] We affirm without discussion the dismissal of Count III, which sought to invalidate Gordon Jr.'s exercise of his power of appointment upon technical grounds.

the validity of Joanna's marriage to Gordon Jr. With regard to Count IV, the trial court found Gordon III substantively barred from collaterally attacking the Nevada decree since Gordon Jr.'s participation in the proceeding bound himself—and Gordon III—to the judgment. Facing the same allegations as Count IV, the trial court entered a nearly identical order dismissing Gordon III's complaint for declaratory relief. As the issues presented in Gordon III's complaint and second amended petition overlap, both cases have been consolidated for the purposes of this appeal.

## *Full Faith and Credit*

Gordon III contends the trial court was "not required or entitled to give full faith and credit to the [Nevada divorce decree] as neither spouse resided in Nevada thus causing the 1979 divorce decree to be void." This claim crumbles against the Full Faith and Credit Clause of the Federal Constitution.

Since a trial court's decision to dismiss a complaint seeking declaratory relief is afforded great deference, *Palumbo v. Moore*, 777 So. 2d 1177, 1178 (Fla. 5th DCA 2001) (citing *Travelers Ins. Co. v. Emery*, 579 So. 2d 798, 800 (Fla. 1st DCA 1991)), our review is for an abuse of discretion. *Leganella v. Boca Grove Golf & Tennis Club, Inc.*, 690 So. 2d 705, 706 (Fla. 4th DCA 1997). Within this evaluation, we "accept the factual allegations of the operative complaints as true and consider them in the light most favorable to the" appellant/petitioner. *Knight v. Merhige*, 133 So. 3d 1140, 1141 (Fla. 4th DCA 2014). In the declaratory judgment setting, "'[t]he test of the sufficiency of a complaint . . . is not whether the complaint shows that the plaintiff will succeed in getting a declaration of rights in accordance with his theory and contention, but whether he is entitled to a declaration of rights at all.'" *S. Riverwalk Invs., LLC v. City of Fort Lauderdale*, 934 So. 2d 620, 622 (Fla. 4th DCA 2006) (quoting *Golf Club v. City of Plantation*, 717 So. 2d 166, 171 (Fla. 4th DCA 1998)).

"The Full Faith and Credit Clause is one of several provisions in the Federal Constitution designed to transform the several States from independent sovereignties into a single, unified Nation." *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 322 (1981) (Stevens, J., concurring). Through the clause's application, "[a] judgment entered in one state must be respected in another provided that the first state had jurisdiction over the parties and the subject matter." *Nevada v. Hall*, 440 U.S. 410, 421 (1979). Where subject matter or personal jurisdiction is lacking, however, the clause is tempered by limitation. As the United States Supreme Court has explained:

[A] judgment of a court in one State is conclusive upon the merits in a court in another State only if the court in the first State had power to pass on the merits—had jurisdiction, that is, to render the judgment. Consequently, before a court is bound by the judgment rendered in another State, it may inquire into the jurisdictional basis of the foreign court's decree. *If that court did not have jurisdiction over the subject matter or the relevant parties full faith and credit need not be given.*

*Underwriters Nat'l Assurance Co. v. N.C. Life & Accident & Health Ins. Guar. Ass'n*, 455 U.S. 691, 704–705 (1982) (internal citations and footnote omitted); *Trauger v. A.J. Spagnol Lumber Co.*, 442 So. 2d 182, 183 (Fla. 1983) ("The full faith and credit clause does not . . . protect a judgment which was entered by a court that did not have personal or subject matter jurisdiction in the action . . . . " (citing *Miliken v. Meyer*, 311 U.S. 457 (1940))).

Consistent with full faith and credit, a divorce decree obtained in a foreign state is impeachable in Florida *only* if the judgment is susceptible to collateral attack under the foreign state's jurisprudence. *See Johnson v. Muelberger*, 340 U.S. 581, 589 (1951). This rule "provide[s] a substantial degree of uniformity regarding the vulnerability of divorce decrees to collateral attack," enhancing the finality of each state's judgments. *In re Marriage of Winegard*, 278 N.W.2d 505, 508 (Iowa 1979). Furthermore, collateral attacks wilt against judgments involving parties who have had their day in court; where "there has been participation by the [parties] in the divorce proceedings" and "the [parties] ha[ve] been accorded full opportunity to contest the jurisdictional issues," any further attack on the judgment is barred by res judicata. *Sherrer v. Sherrer*, 334 U.S. 343, 351 (1948) (footnote omitted); *Coe v. Coe*, 334 U.S. 378 (1948).

In this case, Burguieres initiated the Nevada dissolution proceedings by filing a verified complaint with the trial court, in which she attested to Nevada's limited jurisdictional requirements. After Gordon Jr. answered the complaint without raising a jurisdictional challenge, Burguieres appeared in court and confirmed her residency allegations. As a result, the trial court, in its written order, made a factual finding that Burguieres

is now and has been for more than six weeks preceding the filing of the complaint herein a bona fide resident of and domiciled in the State of Nevada and has been physically and corporally present in said State each and every day for said period of time, and all of said time plaintiff has had and still

- 5 -

has the intent to make said State her home residence and domicile for an indefinite period of time.

Given the participation by both Gordon Jr. and Burguieres, Gordon III's claim falls squarely within Nevada's statutory prohibition on "all third-party attacks on Nevada divorce decrees that are binding on the parties to the divorce action." *Madden v. Cosden*, 314 A.2d 128, 132 (Md. 1974) (citation omitted). As provided by Section 125.185, Nevada Revised Statutes (2010):

No divorce from the bonds of matrimony heretofore or hereafter granted by a court of competent jurisdiction of the State of Nevada, which divorce is valid and binding upon each of the parties thereto, may be contested or attacked by third persons not parties thereto.

The driving force behind Nevada's statutory impediment on collaterally attacking divorce decrees has its origins in the state's decision to establish itself as a premiere divorce destination. A low barrier to attacking a Nevada divorce decree would have been bad for business. As one commentator explains:

To escape states with harsh laws, people with money (or, more frequently, wives of people with money) could get on a train and head for a "divorce mill." Throughout much of the twentieth century, the divorce mill was Nevada. It needed the business, and moral qualms, for whatever reason, have never played a big role in Nevada jurisprudence. In 1927, Nevada reduced its residence period to three months, and in 1931, in a "frenzied attempt to head off . . . threatened rivalry" from other states, Nevada reduced the residence period still further, to six weeks. "Going to Reno" became almost a synonym for getting a divorce.

Lawrence M. Friedman, *A Dead Language: Divorce Law and Practice Before No-Fault*, 86 Va. L. Rev. 1497, 1504-05 (2000). Since both Gordon Jr. and Burguieres participated in the divorce proceedings and are bound by the Nevada decree, Nevada law precludes Gordon III's collateral attack. The Faith and Credit Clause therefore bars his full assault on the Nevada judgment in Florida.

Nevertheless, even overlooking this statutory bar, Gordon III's claim is also ineffective as an assertion of intrinsic—as against extrinsic—fraud. Like many states, Nevada courts adhere to the rule "that a decree of

divorce may be annulled by an independent proceeding for that purpose [only] upon proof of extrinsic fraud." *Colby v. Colby*, 369 P.2d 1019, 1021 (Nev. 1962) (citations omitted); *Confer v. Second Judicial Dist. Court in & for Washoe Cnty.*, 234 P. 688, 689 (Nev. 1925). Intrinsic fraud encompasses "'fraudulent conduct that arises within a proceeding and pertains to the issues in the case that have been tried or could have been tried.'" *Thompson v. Crawford*, 479 So. 2d 169, 183-84 (Fla. 3d DCA 1985) (quoting *Declaire v. Yohanan*, 453 So. 2d 375, 377 (Fla. 1984)); *see also Calvert v. Calvert*, 122 P.2d 426, 427 (Nev. 1942). Extrinsic fraud, on the other hand, is fraud "the effect of which prevents a party from having a trial, or from presenting all of his case to the court, or which operates, not upon the matters pertaining to the judgment itself, but to the manner in which it is procured." *Chamblin v. Chamblin*, 27 P.2d 1061, 1061 (Nev. 1934) (citation omitted).

In this case, since Gordon Jr. appeared through counsel and the face of the record depicts competent, substantial evidence from which the Nevada trial court could find the existence of jurisdiction, the fraud asserted is intrinsic—i.e., Burguieres lied. *See, e.g., Colby*, 369 P.2d at 1021 ("Nothing appears from the record before us tending to establish that Benjamin was prevented by Sarah's conduct from a fair opportunity to assert his rights in or present his defenses to the Nevada action. . . . Clearly the 'fraud' here contended for is intrinsic; it is not extrinsic."). Accordingly, absent assertions of extrinsic fraud, Gordon III's collateral attack lacks sufficient backing to survive dismissal.

### Florida Jurisprudence

To blunt our ruling, Gordon III contends the Florida Supreme Court's decision in *In re Estate of Kant*, 272 So. 2d 153 (Fla. 1972), provides the child of a decedent, as a lineal descendant, with unbridled "standing to challenge and impeach the validity of a divorce decree [in Florida] when it will affect the validity of a later marriage to the reputed surviving spouse." In *Kant*, the deceased's children alleged in an answer to a petition for letters of administration that the deceased's marriage to his current wife was void since the wife's prior divorce to a different spouse in Mexico had never been "rendered." *In re Estate of Kant*, 265 So. 2d 524, 525 (Fla. 3d DCA 1972). At trial, the children presented evidence that the divorce decree was actually a forgery. *Kant*, 272 So. 2d at 155. As a result, the trial court denied the petition for letters of administration, finding that the current wife "was in fact not the widow of the deceased because she had not been lawfully divorced from her prior husband." *Id.*

On appeal, the central issue was whether the children had standing "to

attack collaterally the validity of the Mexican divorce." *Id.* at 156. Noting that the "answer to this question depends upon whether the . . . children had any rights prejudiced by the alleged Mexican divorce decree," our Supreme Court held the children "did have such rights because at the time of such alleged divorce they, as lineal descendents (sic) of their father, . . . were his sole heirs." *Id.* As a result, since the children were "strangers to the appeal," "[b]eing neither parties to the action, nor entitled to manage the cause, nor appeal from the judgment," the court held "they [we]re by law allowed to impeach it." *Id.* (quoting *Freeman on Judgments*, Vol. 1, page 636, Section 319).

The crucial difference between *Kant* and this case is that the Full Faith and Credit Clause was not at issue, since "[s]tates are not required to give full faith and credit to divorces rendered in foreign *nations*" such as Mexico. *In re Schorr's Estate*, 409 So. 2d 487, 489 (Fla. 4th DCA 1981) (emphasis added). Bound by the precepts of full faith and credit, Gordon III was required—unlike the children in *Kant*—to demonstrate his ability to bring the action under the foreign state's jurisprudence. Since, as discussed previously, Gordon III failed to meet this hurdle, his action was impotent and properly subject to dismissal.

*Affirmed.*

CIKLIN, J., and KASTRENAKES, JOHN, Associate Judge, concur.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***