IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

PATRICIA ASSEFF and
ABRAHAM ASSEFF,

  Appellants,

v.

CITIZENS PROPERTY
INSURANCE, a government
entity of the State of Florida,

  Appellee.

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

CASE NO. 1D14-1822

_____/

Opinion filed March 10, 2015.

An appeal from the Circuit Court for Leon County.
Kevin J. Carroll, Judge.

Gary M. Farmer, Jr., Steven R. Jaffe, Mark S. Fistos of Farmer, Jaffe, Weissing, Edwards, Fistos & Lehrman, P.L., Ft. Lauderdale; Todd J. Stabinski of Stabinski & Funt, P.A., Miami; Elliot B. Kula, W. Aaron Daniel, Daija M. Page of Kula & Associates, P.A., North Miami, for Appellants.

Karen D. Walker, Stephen H. Grimes, Matthew H. Mears of Holland & Knight LLP, Tallahassee, for Appellee.

LEWIS, C.J.

  Appellants, Patricia and Abraham Asseff, seek review of the trial court's

order dismissing their Amended Complaint. Appellants contend that the trial court

erred in relying upon <u>Serchay v. State Farm Florida Insurance Co.</u>, 25 So. 3d 652 (Fla. 4th DCA 2010), in concluding that they failed to exhaust the administrative remedies provided for in section 627.371, Florida Statutes. For the reasons that follow, we reject Appellants' argument and affirm.

Florida insurers are required to provide savings to consumers who "install or implement windstorm damage mitigation techniques, alterations, or solutions to their properties to prevent windstorm losses." § 627.0629(1), Fla. Stat. (2012). Rate filings for residential property insurance must "include actuarially reasonable discounts, credits, or other rate differentials, or appropriate reductions in deductibles, for properties on which fixtures or construction techniques demonstrated to reduce the amount of loss in a windstorm have been installed or implemented." <u>Id.</u>

In May 2013, Appellants filed their First Amended Class Action Complaint against Appellee, Citizens Property Insurance Corp., their homeowners insurer, on behalf of themselves and similarly situated entities and/or persons. Appellants alleged that they and the class they sought to represent had submitted uniform mitigation verification inspection forms to Appellee after a professional inspector inspected each insured's property. Appellee allegedly accepted the forms without conducting any separate inspections of the properties and routinely provided insureds premium credits based on the loss mitigation features and inspection

results. According to Appellants, the mitigation forms set forth that "[t]his verification form is valid up to five (5) years provided no material changes have been made to the structure." Prior to the expiration of five years and beginning as early as 2010, Appellee allegedly began re-inspecting its insureds' properties without cause. Appellants alleged that the re-inspection campaign has "led to widespread removal of loss mitigation benefits afforded under the policy in the form of credits to [Appellee's] insureds, including [Appellants} and the class." They further alleged that the campaign "has caused and will continue to cause [Appellants] and Class Members to lose the benefit of their premium discounts and credits [and] [i]t also appears to contravene the fundamental purpose of § 627.711, *Fla. Stat.*, which is to incentivize insureds to fortify their structures against windstorm damage and to lessen their costs of insurance." Appellants were "not challenging [Appellee's] rates, or [its] individual inspections of each Class Member." Nor were Appellants "challenging the discount calculation or discount or credit rating category." Appellants alleged a good-faith belief that the mitigation form was a part of their insurance policy with Appellee and that the policy clearly obligated Appellee to honor their loss mitigation discounts and inspection results for five years absent a material change in their dwelling.

The sole count in the Amended Complaint was for declaratory relief. Appellants sought a declaration that the mitigation form and its terms were

3

incorporated into Appellee's insurance policies, that Appellee must honor the mitigation form and inspection results on an insured's property for five years unless there has been a material change to the property, and that the trial court was the proper forum for issuing declaratory relief. If the trial court entered those declarations, Appellants requested that the court further declare that "the proper forum for Plaintiffs and Class Members to pursue a breach of contract action or other action for benefits based on those declarations is in this Court [the trial court] notwithstanding that *damages* in such an action would be in the form of overpaid premiums."

Appellants attached several exhibits pertaining to Appellee to their Amended Complaint, including a blank homeowners application, a blank supplemental application, a blank Contract Information Form, and a sample Homeowners HO-3 Special Form Policy. Each of those forms was stamped "Approved" by the Office of Insurance Regulation ("OIR"). Appellants also attached Appellee's Homeowners Policy Program Manual Ratings Rules and a blank Uniform Mitigation Verification Inspection Form. As alleged by Appellants, the mitigation form contained the statement "[t]his verification form is valid up to five (5) years provided no material changes have been made to the structure." Appellee's manual provided in part that "[t]he OIR-B1-1802 [mitigation form] is valid for five years provided no material changes have been made to the structure."

Appellee moved to dismiss the Amended Complaint, arguing that Appellants had not alleged that they had exhausted administrative remedies available in section 627.371, Florida Statutes. Appellee relied upon the Fourth District's decision in Serchay v. State Farm Florida Insurance Co., 25 So. 3d 652 (Fla. 4th DCA 2010), in support of dismissal. Following a hearing on the motion, the trial court entered the Order Granting Defendant's Motion to Dismiss, wherein it determined that dismissal was appropriate based upon Serchay. The court found that the injury Appellants complained of was the reduction of wind mitigation credits and the corresponding increase in premiums they and others were required to pay to Appellee for homeowners coverage. Quoting the Amended Complaint, the trial court further found that Appellants sought damages in the form of overpaid premiums. The court subsequently entered a Final Order of Dismissal of Plaintiffs' First Amended Complaint. This appeal followed.

As we have explained, "[C]onsiderable deference is accorded a trial court's order of dismissal of a complaint seeking a declaratory judgment." Fla. Pub. Emps. Council 79, AFSCME v. Dep't of Children & Families, 745 So. 2d 487, 490 (Fla. 1st DCA 1999). As such, the standard of review is abuse of discretion. Id. (citing Abruzzo v. Haller, 603 So. 2d 1338, 1339 (Fla. 1st DCA 1992), which held, "Typically the standard of review of the dismissal of a complaint with prejudice is de novo. . . . However, when dismissing a count in a complaint seeking a

5

declaratory judgment, the trial court's ruling is accorded great deference."); see also Kelley v. Kelley, 147 So. 3d 597, 601 (Fla. 4th DCA 2014) ("Since a trial court's decision to dismiss a complaint seeking declaratory relief is afforded great deference, . . . our review is for an abuse of discretion."); Palumbo v. Moore, 777 So. 2d 1177, 1178 (Fla. 5th DCA 2001) (same); Webb v. Town Council of Town of Hilliard, 766 So. 2d 1241, 1243 (Fla. 1st DCA 2000) (same).

Section 627.711(1), Florida Statutes (2012), requires insurers, using a form prescribed by OIR, to:

> clearly notify the applicant or policyholder of any personal lines residential property insurance policy . . . of the availability and the range of each premium discount, credit, other rate differential, or reduction in deductibles, and combinations of discounts, credits, rate differentials, or reductions in deductibles, for properties on which fixtures or construction techniques demonstrated to reduce the amount of loss in a windstorm can be or have been installed or implemented.

Section 627.371(1), Florida Statutes (2012), the statute at issue, provides in part:

> *Any person aggrieved by any rate charged, rating plan, rating system, or underwriting rule followed or adopted by an insurer,* and any person aggrieved by any rating plan, rating system, or underwriting rule followed or adopted by a rating organization, may herself or himself or by her or his authorized representative make written request of the insurer or rating organization to review the manner in which the rate, plan, system, or rule has been applied with respect to insurance afforded her or him.

(Emphasis added).  If a request is not granted within thirty days after it is made, the aggrieved party may treat it as rejected and may file a written complaint with OIR. Id.

6

In Elite II v. American Casualty Co. of Reading, Pennsylvania, No. 8:05-CV-1623-T-17MAP, 2006 WL 1319540, at *1 (M.D. Fla. 2006), the district court explained that the complaint in the case sought a declaratory judgment on the right to premium credits under the Florida Contracting Classification Premium Adjustment Program ("FCCPAP"), monetary damages, punitive damages for bad faith, and attorney's fees. The defendant requested the dismissal of the cause for failure to state a claim because the plaintiff did not exhaust its administrative remedies under section 627.371, Florida Statutes. Id. The defendant argued that any claim that an insurance rate was improperly applied must be administratively reviewed in accordance with the regulatory scheme and that Florida law precluded the plaintiff from circumventing the required review process by bringing suit. Id. The plaintiff argued that the case was "not about the calculation of rates and the administrative remedies to challenge those calculations" and that the defendant knowingly refused to refund the premium overpaid by the plaintiff. Id. The district court denied the motion to dismiss, setting forth in part:

> Although this case is about the total premium due for the policies issued to Plaintiff, Plaintiff is not challenging alleged improper classification, or the rates on which the premium is based. Plaintiff is seeking a declaration that the policy provisions require Defendant to apply the FCCPAP credit in calculating the correct premium for the policy periods. The Court recognizes the regulatory scheme and the discretion of the Florida Department of Insurance, but finds that the resolution of this case will turn on construction of the insurance policies.

7

Id. at *2.

Turning to Serchay, the case relied upon by the trial court in dismissing the Amended Complaint, the Fourth District explained:

> The plaintiff [appellant] sued his homeowner's insurer, State Farm [appellee], in circuit court, alleging in various causes of action that State Farm violated sections 627.0629 and 627.711. The plaintiff alleged that his home has a windstorm-mitigating hip roof for which the State of Florida requires insurers to provide a premium discount to their insureds. The plaintiff further alleged that State Farm did not notify him of his right to receive the discount, or provide him with the discount. Instead, according to the plaintiff, State Farm required its insureds to complete an inspector-certified windstorm survey to be entitled to the discount. The plaintiff sought to recover the discount, and to enjoin State Farm from allegedly continuing to violate the aforementioned statutes. The plaintiff also sought class action relief on behalf of all other similarly situated State Farm policyholders.

25 So. 3d at 653. The appellee successfully moved to dismiss the complaint, arguing that the appellant failed to exhaust his administrative remedies under section 627.371. Id.

The appellant argued on appeal that section 627.371 did not apply because the case was not about ratemaking and because his complaint did not challenge the appellee's rates. Id. at 654. The appellant contended that the action "concerns State Farm's failure to provide the statutorily-mandated premium discount." Id. In rejecting the appellant's argument and affirming the trial court's dismissal, the Fourth District held that a premium discount is "inextricably linked to the rate charged and, therefore, section 627.371 applies to the plaintiff's action." Id. The

8

Fourth District reasoned as follows:

> [T]o the extent an insured claims to have been wrongly deprived of a premium discount, the insured essentially is claiming to have been aggrieved by the rate charged.
>
> Such a claim finds its remedy in section 627.371. Any person aggrieved by any rate charged may request review of the manner in which the rate "has been applied," i.e., the premium. *See* §§ 627.371; 627.041(1). Upon sufficient complaint, the OIR is required to notify the insurer as to the manner in which to correct the noncompliance, including any "premium adjustment." *See* § 627.371(2). Thus, under section 627.371's plain language, a request for a "premium adjustment" necessarily must arise from a challenge to the "rate charged."
>
> The statutes upon which the plaintiff bases his action further demonstrate on their face that the rate charged and any premium discounts are inextricably linked. Section 627.0629(1)(a) provides that a rate filing for residential property insurance must include "reasonable discounts ... or *other rate differentials*" for properties on which windstorm mitigation techniques have been installed. (emphasis added) Section 627.0629(2)(c) provides that "[t]he *premium* notice shall specify the amount by which the *rate* has been adjusted." (emphasis added) Section 627.711(1) provides that the insurer shall notify the policyholder of the availability and the range of each "premium discount ... [or] *other rate differential*" for properties on which windstorm mitigation techniques have been installed. (emphasis added)
>
> Our application of section 627.371 to the plaintiff's action here is consistent with the results of cases from three other district courts. *See FCCI Ins. Co. v. NCM of Collier County, Inc.,* 15 So.3d 5 (Fla. 2d DCA 2009) (insured challenging good faith calculation of insurance premiums must avail itself of the administrative process under section 627.371); *Progressive Express Ins. Co. v. Reaume,* 937 So.2d 1120 (Fla. 2d DCA 2006) (insured alleging that her insurer charged excessive rate by violating statute prohibiting insurers from seeking excessive premium finance charges was required to first seek relief with OIR under section 627.371); *State Farm Mut. Auto. v. Gibbons,*

9

860 So.2d 1050 (Fla. 5th DCA 2003) (insured alleging that her insurer charged excessive rate by violating statute prohibiting insurers from considering monies paid on bad faith and punitive damage claims when determining rates was making "challenge to the rate-making process" for which exclusive remedy was administrative review under section 627.371); *Int'l Patrol & Detective Agency, Inc. v. Aetna Cas. & Sur. Co.,* 396 So.2d 774 (Fla. 1st DCA 1981) (insured alleging that its insurers charged excessive rates by violating statute requiring insurers to consider investment income when determining rates had adequate administrative remedy under section 627.371 and was barred from bringing circuit court action).

We find inapplicable the cases upon which the plaintiff relies, but we choose to address one of those cases, *Elite II v. Am. Cas. Co. of Reading, Pa.,* No. 8:05-CV-1623-T-17MAP, 2006 WL 1319540 (M.D.Fla. May 11, 2006). . . .

The plaintiff relies on *Elite II* because that case dealt with the application of a credit in calculating a premium, not the basis for calculating the premium. Respectfully, we disagree with *Elite II* based on our statutory analysis and case comparison above. Notably, the federal district court's decision did not examine any of the Florida state cases which we have examined, and appears inconsistent with those cases.

Id. at 654-55.

We agree with the Fourth District's holding in Serchay and conclude that the trial court properly applied Serchay in dismissing Appellants' Amended Complaint. While Serchay did not involve a declaratory judgment action, the Fourth District disagreed with Elite II, which did involve such an action. The trial court in this case correctly found that the injury Appellants complain of is the reduction or elimination of wind mitigation credits and the corresponding increase in premiums. As alleged by Appellants, Appellee's re-inspections caused the loss

10

of "the benefit of their premium discounts and credits." Appellants further alleged that Appellee's re-inspection campaign "has led to widespread removal of loss mitigation benefits." As the Fourth District in Serchay explained, an insured who claims to have been wrongly deprived of a premium discount is essentially claiming to have been aggrieved by the rate charged by the insurer.

Our agreement with the Fourth District's holding in Serchay is supported by Continental Casualty Co. v. First Financial Employee Leasing, Inc., 716 F. Supp. 2d 1176, 1178 (M.D. Fla. 2010), the only case that has addressed both Serchay and Elite II. In Continental Casualty Co., the plaintiffs brought an action to recover amounts owing under two policies of workers' compensation and employers liability insurance issued to the defendant. The defendant counterclaimed and raised a breach of contract claim in Count II, asserting that in determining the amount of premium owed by it, the plaintiff was required by Florida law and the insurance policies to apply a premium credit provided by the FCCPAP. Id. The plaintiffs argued that because Count II challenged a premium rate calculation and sought a premium rate adjustment, the defendant was required to exhaust its administrative remedies under section 627.371. Id. at 1178-79. The district court agreed with the plaintiff that the defendant failed to exhaust administrative remedies. Id. at 1179. The court noted that the defendant argued that its claims, like those in Elite II, were based not on rates or rate calculations but on a breach of

11

an obligation under the policies to apply the FCCPAP and because its claims and defenses were based solely on construction of the insurance policies, the result would turn on construction of the policies. Id. at 1187. After noting that the Fourth District in Serchay disagreed with the Elite II opinion, the district court set forth:

> The Court concludes that [the defendant] was required to exhaust its administrative remedies under Section 627.371 before filing suit. First, [the defendant's] contention that this case is not about premium rates is incorrect. The evident purpose of the FCCPAP credit is to effectively reduce construction classification rates that disfavor certain employers paying above-average wages. . . .
>
> Second, *Serchay* expressly held that Section 627.371 applies to a premium discount. To that extent, its disagreement with *Elite II* was necessary to the decision and not dicta. To the extent that [the defendant] contends that the FCCPAP credit is mandated by statute, *Serchay's* holding applies because there is no relevant difference between a statutorily mandated premium discount and a statutorily mandated premium credit.
>
> Third, even to the extent *Serchay's* holding does not cover the facts of this case (*e.g.*, because [the defendant's] claim is based in part on contract), its extraordinarily broad rationale does. *Serchay* reasoned that because a premium adjustment necessarily changes the rate charged, a claim to a premium discount is essentially a challenge to the "rate charged" within the meaning of Section 627.371.
>
> Fourth, *FCCI Ins. Co. v. NCM of Collier County, Inc.* appears to support requiring exhaustion here. *FCCI* involved a premium calculation challenge based on (a) allegedly inaccurate payroll amounts and loss reserves and (b) an allegation that the insurer had "*agreed* to reduce the premium amount" after being informed that losses were overstated. 15 So.3d at 6 (emphasis added). Although it distinguished *Elite II,* the Second District Court of Appeal in *FCCI* required exhaustion of a claim for a premium reduction based in part

on an alleged agreement between the parties. *FCCI* thus suggests that a premium challenge is not necessarily exempted from the requirement of administrative review merely because it is based in part on contract.

Finally, [the defendant's] contention that its claim for a premium refund is based solely on a construction of the Policies and the "endorsements" is disingenuous. [The defendant] has contended throughout this lawsuit and continues to contend that application of the FCCPAP credit is mandated not only by the Policies but also by Florida law, *i.e.,* Florida statutory law and the NCCI Manual as "codified" by Florida law or regulation.

In sum, Florida appellate courts have not followed the narrower interpretation of *Florida Welding* suggested by *Elite II* and relied on by Defendant. Absent a persuasive indication that the Florida Supreme Court would disagree with *Serchay* or decide the issue differently, the Court concludes that [the defendant] was required to exhaust its administrative remedies under Section 627.371 before seeking relief in court. . . .

Id. at 1188-89.

Appellants' attempt to distinguish Continental Casualty Co. on the basis that it involved a challenge to specific rates under a contract while their challenge is based on Appellee's re-inspection rights is unavailing. By virtue of the fact that Appellants filed suit against Appellee and alleged a loss of premium discounts and credits, Appellants have been "aggrieved by any rate charged" pursuant to section 627.371(1). The statute also speaks to "[a]ny person aggrieved by any . . . underwriting rule followed or adopted by an insurer." While the mitigation form at issue states that it is "valid up to five (5) years provided no material changes have been made to the structure," Appellee's Homeowners Policy Program Manual

13

Rating Rules, which were attached as an exhibit to the Amended Complaint, provide that the mitigation form "is valid for five years provided no material changes have made to the structure." To the extent that Appellants wish to argue that Appellee failed to abide by its policy manual and rating rules by re-inspecting its insureds' properties too soon, section 627.371(1) is the appropriate avenue for relief. We note also that Appellants' other exhibits, including insurance policies, were stamped "Approved" by OIR. Given such, Appellants have failed to persuade us that they cannot proceed in the manner provided for in section 627.371 in seeking a resolution of the issue as to whether, pursuant to their policy with Appellee, they are entitled to overpaid premiums as a result of Appellee's inspections.

While Appellants also take issue with the trial court's determination that the Amended Complaint sought damages in the form of overpaid premiums, Appellants did, in fact, seek a declaration that the trial court was the proper forum to pursue a breach of contract action, "notwithstanding that *damages* in such an action would be in the form of overpaid premiums." Moreover, while Appellants attempt to distinguish Serchay on the basis that they did not invoke the Florida Insurance Code or claim a violation of such in their Amended Complaint, they alleged therein that Appellee's re-inspection campaign "also appears to contravene the fundamental purpose of § 627.711, *Fla. Stat.*, which is to incentivize insureds

14

to fortify their structures against windstorm damage and to lessen their costs of insurance." Appellants acknowledge on appeal that their declaratory relief action was an attempt to circumvent the requirement to pursue administrative relief pursuant to section 627.371. Specifically, they represent that the Amended Complaint was "carefully tailored" to "limit[] the requested remedy to avoid invoking the Florida Insurance Code and administrative review, putting this case beyond the purview of Serchay . . . ." However, for the reasons stated herein, Appellants' attempt at circumvention must fail. Because the trial court did not err in dismissing the Amended Complaint, we affirm the order on appeal.

AFFIRMED.

BENTON and THOMAS, JJ., CONCUR.